**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

ALEXANDRE KANTOR,

                        Plaintiff,           <u>**REPORT AND RECOMMENDATION**</u>

     v.                               19-CV-03597 (EK) (ST)

AIR ATLANTIC MEDICAL, P.C.,
and ALEXANDER IVANOV, M.D., *Individually*,

                        Defendants.
-----------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

      Plaintiff Alexandre Kantor ("Kantor") commenced this action against Defendants Air

Atlantic Medical, P.C. ("Air Atlantic") and Alexander Ivanov, M.D. ("Ivanov"), individually,

under the Fair Labor Standards Act, 29 U.S.C § 201, *et seq*. ("FLSA"), and the New York Labor

Law, N.Y. Lab. Law §190 *et seq*. ("NYLL").  Compl., ECF No. 1.  After Defendants failed to

appear or otherwise defend this action, the Clerk of Court entered default.  *See* Clerk's Entry

Default, ECF No. 22.  On January 19, 2021, Kantor moved for a default judgement against

Defendants.  *See* Notice Mot. Default J., ECF No. 24.  The Honorable Eric R. Komitee referred

the Motion to this Court to issue a Report and Recommendation.

## I.   BACKGROUND [1]

      Kantor is an individual who is a citizen of New York State and resides in Kings County.

Compl. ¶ 6.  Air Atlantic is a professional corporation duly organized under the laws of the State

of New York with its principal place of business located at 115 Brightwater Court, Unit 1G,

Brooklyn, New York 11235.  *Id*. ¶ 7.  Air Atlantic is a medical office.  *Id*. ¶ 8.  On or about

---

[1] The following facts are derived from the Complaint and other accompanying documents, and are deemed to be true for the purpose of deciding the instant motion.

September 28, 2016, Kantor began working for Defendants as a "Manager/Practice Administrator," with the agreed upon salary of $750.00 per week. *Id*. ¶ 21. Ivanov was Kantor's supervisor. *Id*. ¶ 11. Kantor was mainly responsible for overseeing the operation and administration of Air Atlantic's medical office. *Id*. ¶ 22. Kantor worked at Air Atlantic from approximately September 28, 2016 to March 23, 2018. *Id*. ¶¶ 21, 36. Kantor alleges that throughout the entirety of his employment, Defendants consistently failed to pay him his earned wages, and also failed to pay him the statutory minimum wage. *Id*. at ¶¶ 19, 20. Altogether, Kantor alleges that he is owed $54,650.00 in unpaid wages. Kantor Decl. ¶ 20, ECF No. 26-3.

Kantor commenced this action on June 19, 2019. *See generally* Compl. This Court held an initial conference on October 2, 2019, at which counsel for both parties appeared. *See* Min. Entry Oct. 2, 2019 Conference, ECF No. 14. On January 17, 2019, Kantor's counsel filed a letter indicating she "has been unable to reach or communicate with Defendants' counsel." Letter, ECF No. 15. On January 23, 2020 this Court held a status conference, at which counsel for Defendants failed to appear. Min. Entry Jan. 23, 2020 Conference, ECF No. 16. As a result, this Court ordered Defendants to show cause on February 6, 2020 as to "why the Court should not recommend that a default judgment be entered against them for their failure to defend." *Id*. However, Defendant's counsel failed to appear at the February 6, 2020 show cause hearing, and the attorney who was sent was not licensed to practice in this District. Min. Entry Feb. 6, 2020 Show Cause Hr'g, ECF No. 17. As a result, this Court awarded Kantor's counsel costs and attorney's fees in connection with both the January 23, 2020 conference and the February 6, 2020 conference. *Id*. Finally, Defendants did not appear at the settlement conference conducted via telephone on March 24, 2020. Min. Entry Mar. 24, 2020 Telephone Conference, ECF No. 18.

On September 23, 2020, this Court recommended, *sua sponte*, striking Defendants' answer, directing the Clerk of the Court to issue certificates of default against Defendants, and permitting Kantor to move for default judgement within 45 days of the issuance of the certificate of default.  R. & R., ECF No. 19.  On December 4, 2020, the Honorable Eric R. Komitee adopted this Court's Report and Recommendation in its entirety.  Mem. & Order, ECF No. 21.  On January 19, 2021, Plaintiff filed the instant Motion, *see* Notice Mot. Default J.; Mem. Supp. Mot. Default J., ECF No. 25, which the Honorable Eric R. Kommitee referred to this Court.  *See* Electronic Order, Jan. 20, 2021.

## II.   APPLICABLE LAW

The Federal Rules of Civil Procedure prescribe a two-step process for a plaintiff to obtain a default judgment.  First, when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Second, after a default has been entered against a defendant, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on a plaintiff's motion, enter a default judgment.  Fed. R. Civ. P. 55(b)(2).

Once a defendant is found to be in default, he is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability.  *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).  However, a court retains the discretion to determine whether a final default judgment is appropriate.  *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993); *see also Taylor v. 312 Grand St. LLC*, 2016 WL 1122027, at *3 (E.D.N.Y. Mar. 22, 2016) ("[J]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right.") (internal quotation marks and citations omitted).  In light

of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default

judgments are "generally disfavored." *Enron*, 10 F.3d at 95-96.

Thus, despite a defendant's default, the plaintiff bears the burden of demonstrating that

the unchallenged allegations and all reasonable inferences drawn from the evidence provided

establish the defendant's liability on each asserted cause of action. *City of New York v. Mickalis*

*Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d

61, 65 (2d Cir. 1981).  In other words, "after default ... it remains for the court to consider

whether the unchallenged facts constitute a legitimate cause of action, since a party in default

does not admit conclusions of law." *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d

150, 153 (E.D.N.Y. 2010) (internal quotation marks and citations omitted), *adopted by*, 688 F.

Supp. 2d 150, 151 (E.D.N.Y. 2010).

## III.    ANALYSIS

### a.    The FLSA Applies to Plaintiff's Claims

The FLSA governs minimum wages, maximum hours, and other policies and practices

affecting employees and employers. *See Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 224 (2014).

For a plaintiff to establish minimum wage protections under the FLSA, they must provide that:

(1) that the defendant employed plaintiff; and (2) that the employment fell under the FLSA's

individual or enterprise coverage provisions. *See Jacobs v. New York Foundling Hosp.*, 577 F.3d

93, 96–97 (2d Cir. 2009) (citing *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290,

295 n.8 (1985)); *see also* 29 U.S.C. § 206(a)(1) (providing for minimum wage for qualifying

employees).

### i.  Plaintiff has established that Defendants were his Employers

The FLSA broadly defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  However, courts in this Circuit have held that "there is 'no rigid rule for the identification of an FLSA employer.'" *Teri v. Spinelli*, 980 F. Supp. 2d 366, 374–75 (E.D.N.Y. 2013) (citing *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 143 (2d Cir. 2008)).  Rather, the touchstone in determining whether an individual is an employer under the FLSA, is whether they have "operational control" over employees, meaning whether an individual exercises control over, and makes decisions that "directly affect the nature or conditions of the employees' employment." *Irizarry v. Catsimatidis*, 722 F.3d 99, 110 (2d Cir. 2013).  Nonetheless, the Second Circuit looks to the non-exclusive factors enumerated in *Carter v. Dutchess Community Coll*ege to determine who qualifies as an "employer" for the purposes of individual liability.  *See Thompson v. Hyun Suk Park*, No. 18-CV-0006, 2020 WL 5822455, at *2 (E.D.N.Y. Sept. 1, 2020), *adopted by*, No. 18-CV-00006, 2020 WL 5820547 (E.D.N.Y. Sept. 30, 2020) (citing *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)).

These factors include: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter,* 735 F.2d at 12. (2d Cir. 1984).  "Despite these enumerated factors, however, a district court should consider any factor relevant to its assessment of the economic realities of an employer-employee relationship." *Khan v. Nyrene, Inc*., No. 18-CV-557, 2020 WL 1931282, at *3 (E.D.N.Y. Mar. 11, 2020), *adopted by*, No. 18-CV-557, 2020 WL 1929066 (E.D.N.Y. Apr. 21, 2020) (citing *Ling Nan Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71–72 (2d Cir. 2003)).

Kantor's allegations suffice to establish that Defendants were his employers within the meaning of the FLSA.  First, Kantor alleges that Ivanov "hired [him] as a 'Manager/Practice Administrator,' with the agreed upon salary of approximately $750 per week."  Kantor Decl. ¶ 2. Kantor also asserts that "Ivanov was [Kantor's] supervisor and had supervisory authority over [him]." Compl. ¶ 11.  Second, Kantor makes additional allegations of actions taken collectively by the "Defendants" in the Complaint.  *See Shim v. Millennium Grp.*, LLC, No. 08–CV–4022, 2010 WL 409949, at *2 (E.D.N.Y. Jan. 27, 2010) (imposing joint and several liability under the FLSA where complaint contained allegations of actions taken collectively by "Defendants"). Specifically, Kantor alleges that both Defendants (1) "had the power to and were responsible for determining the wages to be paid to [Kantor]," Compl. ¶ 13, (2) "had the power to, and did in fact, establish the terms of [Kantor's] employment, including [his] schedule and rate of pay," *Id*. ¶ 14, and (3) "maintained schedules for their employees regarding the times the Defendants mandated them to work,". *Id*. ¶ 18.

Applying the *Carter* factors, these allegations sufficiently establish that Ivanov was an employer within the meaning of the FLSA, based on his alleged supervisory authority and control over Kantor's work schedules, conditions, wage rate, and method of payment.[2]  *See Carter*, 735 F.2d at 12; *see also Herman v. RSR Sec. Services Ltd*., 172 F.3d 132, 140 (1999) (individual was an "employer" under the FLSA where individual hired plaintiffs, paid plaintiffs, and "supervised and controlled employee work schedules and conditions of employment," even

---

[2] An exception here to the formal control test is that Kantor does not allege the fourth factor, that Defendants "maintained employment records." Irizarry, 722 F.3d at 110.  Here, this is explained by the Complaint, which states that Defendants "failed to maintain accurate and sufficient time records." Compl. ¶ 45; see also Irizarry, 722 F.3d at 110. (finding defendant liable as an employer, despite not meeting the first and fourth factors, because "[defendant's] active exercise of overall control over the company, his ultimate responsibility for the plaintiff's wages, his supervision of managerial employees, and his actions in individual stores – demonstrate that he was an 'employer' for purposes of the FLSA").

where no evidence showed that the individual kept employment records); *see also Thompson*, 2020 WL 5822455, at *2 (reaching the same conclusion).

Additionally, Kantor's allegations are also sufficient to establish that Kantor was jointly employed by Air Atlantic. *See Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314, 2015 WL 5561033, at *2 (E.D.N.Y. Sept. 1, 2015) (holding allegations that Individual had authority over personnel and payroll decisions and authority to hire and fire employees adequate to impose joint and several liability) (citing *Rodriguez v. Almighty Cleaning, Inc.*, 784 F.2d, 114, 128-129 (E.D.N.Y. Mar. 28, 2011)), *adopted by*, No. 14-CV-3314, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015).  Such allegations, coupled with Defendants default, establish that Kantor was jointly employed by Ivanov and Air Atlantic.

### ii.  Individual Coverage is not Established

To establish individual coverage, the employee must perform work "involving or related to the movement of persons or things . . . among the several States or between any State and any place outside thereof."  *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 354 (E.D.N.Y. 2015) (quoting 29 C.F.R. § 779.103) (emphasis omitted).  As such, unlike enterprise coverage, the court "must focus on the activities of the employees and not on the business of the employer" in determining whether the plaintiff qualifies for individual coverage.  *See Xelo v. Mavros*, No. 03-CV-3665, 2005 WL 2385724, at *4 (E.D.N.Y. Sept. 28, 2005) (quoting *Mitchell v. Lublin*, 358 U.S. 207, 211 (1959)).  "In cases brought under the FLSA alleging that an employee is individually covered, the employee bears the burden of establishing his individual coverage." *Owusu v. Corona Tire Shop, Inc.*, No. 09-CV-3744, 2013 WL 1680861, at *3 (E.D.N.Y. Apr. 17, 2013) (citing *Boekemeier v. Fourth Universalist Soc'y in the City of N.Y.*, 86 F. Supp. 2d 280, 285 (S.D.N.Y. 2000)).

"An employee is 'engaged in commerce' under the meaning of the statute if their work 'is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity.'" *See Jiao v. Shi Ya Chen*, No. 03-CV-165, 2007 WL 4944767, at *8 (S.D.N.Y. Mar. 30, 2007) (quoting *Mitchell v. C.W. Vollmer & Co.*, 349 U.S. 427, 429 (1955)); *see also Boekemeier*, 86 F. Supp. 2d at 287 ("[w]ork that directly involves interstate commerce must make up a 'substantial part' of the employee's overall employment activities"). As such, the dispositive test for individual coverage "asks whether a plaintiff was an employee 'in the channels of interstate commerce,' as distinguished from [one] who merely affected that commerce." *See Xelo*, 2005 WL 2385724 at *4 (quoting *McCleod v. Threlkeld*, 318 U.S. 491, 494 (1943)).

Here, Kantor has not met the standard for individual coverage under the FLSA. In his Complaint, Kantor states that he "routinely engaged in activities which facilitate or relate to interstate or foreign commerce while on the job." Compl. ¶ 17. Specifically, Kantor attests that "as part of [his] duties, [he] regularly mailed letters to recipients in other states and would make phone calls to persons and entities outside the State of New York." Kantor Decl. ¶ 4. However, courts in our Circuit have routinely held that descriptions such as these are insufficient to demonstrate that plaintiffs were "part of the channels of interstate commerce," for purposes of individual coverage. *See, e.g., Owusu*, 2013 WL 1680861, at *4 ("Evidence that an employee sometimes engaged in an activity that can be considered interstate commerce, such as bank transactions or mail delivery, is not sufficient to show that the employee was in the channels of commerce rather than merely affecting commerce") (internal quotation marks omitted); *Locke v. St. Augustine's Episcopal Church*, 690 F. Supp. 2d 77, 91 (E.D.N.Y. 2010) (regularly delivering mail to the post office was not sufficient to establish a plaintiff's individual coverage under the

FLSA); *Walker v. The Interfaith Nutrition Network, Inc.*, No. 14-CV-5419, 2015 WL 4276174, at *5 (E.D.N.Y. July 14, 2015) (finding no individual coverage where plaintiff's allegations "fail to indicate the regularity of their interstate telephone calls or the substance and purpose of these calls"); *Jones v. SCO Family of Servs.*, 202 F. Supp. 3d 345, 351 (S.D.N.Y. 2016) (finding no individual coverage where plaintiff's "allegations of regular use of items ordered from outside of New York or 'regular contact' with persons and organizations also from out of state are vague, provide no information about the frequency of those contacts, and therefore cannot not support an assertion that a substantial part of Plaintiff's work closely relates to interstate commerce").

Accordingly, Kantor fails to make a sufficient showing of the essential elements of individual coverage protection under the FLSA.

### iii. Enterprise Coverage is Established

However, Kantor's allegations are sufficient to show that he was employed by an enterprise engaged in commerce as defined by the FLSA.  To fall under enterprise coverage, the enterprise must have receipts greater than $500,000, and at least some employees must "'handle, sell, or otherwise work on goods or materials that have been moved in or produced for interstate commerce.'"  *See Khan*, 2020 WL 1931282, at *4 (quoting *Ethelberth*, 91 F. Supp. 3d at 355).

"Plaintiffs bear the burden of alleging specific facts which would allow the Court to infer defendants' liability rather than mere 'labels and conclusions' or a 'formulaic recitation of the elements.'"  *See Cardoza*, 2015 WL 5561033 at *3 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).  Courts in this District have routinely found recitations of the 29 U.S.C § 203(s)(1)(A) standard, such as that proffered here by Kantor, to be insufficient to establish liability under the FLSA.  *See Jones v. E. Brooklyn Sec. Servs. Corp.*, No. 11–CV–1021, 2012 WL 909830, at *2 (E.D.N.Y. Feb. 28), *adopted by*, No. 11-CV-1021,

2012 WL 909825 (E.D.N.Y. Mar. 16, 2012) (plaintiff's failure to provide factual support for interstate commerce assertions raised threshold question of whether plaintiff's employment was covered by FLSA); *Day An Zhang v. L.G. Apparel Inc.*, No. 09–CV–3240, 2011 WL 900183, at *2 (E .D.N.Y. Feb. 18), *adopted by*, No. 09-CV-3240, 2011 WL 900950 (E.D.N.Y. Mar.15, 2011) (recommending denial of plaintiff's motion for default judgment in part because "plaintiff alleges only in conclusory terms and without any factual support whatsoever that defendants are enterprises subject to the requirements of the FLSA or that she is individually covered under the FLSA").

However, "[s]ome judges in this district have inferred FLSA coverage from the nature of the employer's business, notwithstanding . . . pleading deficiencies." *Cardoza*, 2015 WL 5561033 at *4 (quoting *Huerta v. Victoria Bakery*, No. 10–CV–4754, 2012 WL 1100647, at *8 (E.D.N.Y. Feb. 17), *adopted in relevant part sub nom, Huerta v. Victoria Bakery*, 2012 WL 1107655 (E.D.N.Y. Mar.30, 2012); *see also See Shim v. Millennium Grp.*, No. 08-CV-4022, 2009 WL 211367, at *3 (E.D.N.Y. Jan. 28, 2009) (finding enterprise coverage where "plaintiffs' complaint does not explicitly allege that the corporate defendants are an enterprise engaged in interstate commerce").

Air Atlantic is a medical office based in New York.  Compl. ¶¶ 7, 8.  Kantor alleges that during his employment at that office, "[he] routinely engaged in activities which facilitate or relate to interstate or foreign commerce while on the job."  Compl. ¶ 17.  "Even 'local business activities fall within the reach of the FLSA when [it] employs workers who handle goods or materials that have moved or been produced in interstate commerce.'"  *Cardoza*, 2015 WL 5561033, at *4 (quoting *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y.1998).  Further, Kantor alleges that "[D]efendants grossed more than $500,000 in the

past fiscal year." Compl. ¶ 17; *see also Cardoza*, 2015 WL 5561033 at *4 ("Plaintiffs' specific allegation that Defendants have an annual gross revenue in excess of $500,000.00, though somewhat conclusory, is sufficient to meet the pleading requirement under the FLSA") (citation omitted).

Although these allegations are somewhat conclusory, it is reasonable to assume that a medical office which grossed more than $500,000 in the past fiscal year uses materials that have originated from out-of-state. *See Shim v. Millennium Grp.*, No. 08-CV-4022, 2009 WL 211367, at *3 (E.D.N.Y. Jan. 28, 2009) (finding identification of defendant as medical facility sufficient to infer enterprise coverage as "it is simply inconceivable that none of the medical, custodial or office supplies used at the Center originated outside of New York"); *Monaia v. Grinell*, No. 96-CV-9769, 1997 WL 363813, at *2 (S.D.N.Y. July 1, 1997) (holding that podiatrist's single-state practice was covered by FLSA where "medical supplies used to treat patients were purchased out-of-state").

Accordingly, Kantor's allegations, coupled with the fact that courts have "noted that virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA," are sufficient to meet the pleading requirement for an FLSA claim in a default proceeding. *See Shim,* 2009 WL 211367, at *3 (quoting *Archie v. Grand Cent. P'ship, Inc.*, 997 F.Supp. 504, 530 (S.D.N.Y. 1998)); *see also Khan,* 2020 WL 1931282, at *5 (finding similar allegations in the complaint, admitted by entry of default, sufficient to establish FLSA protections).

### b. The NYLL Applies to Plaintiff's Claims

As with the FLSA, the NYLL covers certain activities or practices affecting employers and employees.  The NYLL defines an employer as a "person, corporation, limited liability

company, or association employing any individual in any occupation, industry, trade, business or service." NYLL § 190(3).  An employee is defined as "any person employed for hire by an employer in any employment." NYLL § 190(2).  Because this definition is similar to the FLSA's definition, "courts use the same tests to determine joint employment under both the NYLL and the FLSA." *Ntalianas v. B & A Contracting of Landmark, Inc*., No. 16-CV-5934, 2018 WL 1701960, at *3 (Feb. 26, 2018) (citation and brackets omitted), *adopted by*, 2018 WL 1582294 (E.D.N.Y. Mar. 31, 2018).

As stated above, this Court finds that Kantor was employed jointly by Defendants under the FLSA, and therefore this Court applies the same standards to find that Kantor was employed by Ivanov and Air Atlantic under both the NYLL and FLSA.  *See Khan*, 2020 WL 1931282, at *5 (citing *Ansoumana v. Gristede's Operating Corp*., 255 F. Supp. 2d 184, 188–89 (S.D.N.Y. 2003)).

### c.  Timeliness under the FLSA and the NYLL

Kantor filed suit in June 2019 seeking unpaid wages for a period of employment that began in 2016.  The NYLL has a six-year statute of limitations. *See* NYLL § 663(3).  The FLSA normally has a two-year statute of limitations, *see* 29 U.S.C. §255(a), but it extends to three years if the plaintiff can show that the employer's actions were willful.  *Id*; *see also Ochoa v. Aucay Gen. Constr. Inc.,* No. 19-CV-3866, 2020 WL 9814092, at *4 (E.D.N.Y. Sept. 15, 2020) ("[a]n employee bringing suit bears the burden of showing that the alleged FLSA violations were willful") (citing *He v. Home on 8th Corp., No. 09-CV-5630* 2014 WL 3974670, at *6 (S.D.N.Y. Aug. 13, 2014)).  Kantor alleges that Defendants' failure to pay him from September 2016 through March 2018 was willful.  *See* Compl. ¶ 44; Kantor Decl. ¶¶ 6, 9, 12, 17.  "Generally, courts have found that a defendant's default establishes willfulness."  *Herrera v. Tri-State*

12

*Kitchen & Bath, Inc.*, No. 14-CV-1695, 2015 WL 1529653, at *6 (E.D.N.Y. Mar. 31, 2015)

(citing *Hernandez v. PKL Corp.*, 12-CV-2276, 2013 WL 5129815, at *2 (E.D.N.Y. Sept. 12,

2013); *see also Suarez Castaneda v. F&R Cleaning Servs. Corp.*, No. 17- CV-7603, 2019 WL

5694118, at *7 (E.D.N.Y. Mar. 15, 2019), *adopted by*, 2019 WL 5693768 (E.D.N.Y. July 8,

2019) ("[t]he three-year statute of limitations period applies here because Defendants' default

itself establishes willfulness").

  This Court deems Kantor's allegations to be admitted by virtue of Defendants' default,

finds Defendants' violations were willful, and thus applies the three-year statute of limitations

period for the FLSA violations.  *Ochoa*, 2020 WL 9814092, at *5 (E.D.N.Y. Sept. 15, 2020)

(applying the three-year statute of limitations because defendants' default established

willfulness).  Accordingly, given that Kantor filed his complaint on June 19, 2019, the

limitations period for the FLSA claims extends to June 19, 2016, and the limitations period for

the NYLL claims extends to June 19, 2013.  *See id.* at *3 (citing *Suarez Castaneda*, 2019 WL

5694118, at *7).

### d.  Liability and Damages

  By defaulting, a defendant admits the well-pleaded allegations relating to liability, but not

those pertaining to damages.  *See Cement & Concrete Workers Dist. Council Welfare Fund*, 699

F.3d at 234.  As stated above, once liability is established as to a defaulting defendant, the

plaintiff must still establish damages to a "reasonable certainty."  *Id*.  Rule 55(b)(2) of the

Federal Rules of Civil Procedure provides that, in order to determine the amount of damages in

the context of a default judgment, "the court may conduct . . . a hearing."  A hearing is not

required, however, as detailed affidavits, and other documentary evidence can suffice.  *Sun v.

AAA Venture Capital, Inc.,* 2016 WL 5793198, at *3 (E.D.N.Y. Sept. 12, 2016) (citing *Action*

*S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991)), *adopted as modified by*, 2016 WL 5868579 (E.D.N.Y. Oct. 6, 2016).  Additionally, the employee may satisfy his or her burden by relying solely on recollection.  *Rivera v. Ndola Pharmacy Corp.*, 497 F.Supp.2d 381, 388 (E.D.N.Y.2007) (citing *Doo Nam Yang v. ACBL Corp.*, 427 F.Supp.2d 327, 335 (S.D.N.Y.2005).

Kantor seeks the following amounts upon a finding of liability: (1) $54,650 in unpaid minimum wages under both the FLSA and NYLL; (2) $54,650 in liquidated damages on the unpaid minimum wages under both the FLSA and NYLL; (3) $4,918.50 in prejudgment interest under the NYLL; (4) $5,000 for wage notice violations under NYLL § 198(1-b); (5) $5,000 for required paystub violations under NYLL § 198(1-d); and (6) $14,593 in attorney fees and costs under both the FLSA and NYLL.  Kantor Decl. ¶ 20; Compl. ¶¶ 40, 42, 46, 62; Mem. Supp. at 11-16.

### i. Underpaid Wages

An employer subject to the FLSA and the NYLL is required to pay its employees at least the minimum wage for every hour worked.  *See* 29 U.S.C. § 206; NYLL § 652(1); N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 12, § 142-2.1(a).  However, unlike the FLSA, the NYLL also permits recovery for wages earned in accordance with the agreed terms of employment.  *See* NYLL § 191(1)(d); *see also Kernes v. Glob. Structures, LLC*, No. 15-CV-00659, 2016 WL 880199, at *3 (S.D.N.Y. Mar. 1, 2016) ("[p]ursuant to the NYLL a prevailing party is entitled to recover 'the full amount of wages, owed, not just the statutory minimum wage for hours worked.'") (citing *Chun Jie Yin v. Kim*, No. 07-CV-1236, 2008 WL 906736, at *3 (E.D.N.Y. Apr. 1, 2008)); *see also* NYLL § 198(3) ("All employees shall have the right to recover full wages . . . accrued during the six years previous to the commencing of such action").  If a plaintiff is entitled to recover actual damages under both federal and state wage and hour laws,

the court has discretion to award damages under the statute providing the greater damages.  *See Almanzar v. 1342 St. Nicholas Ave. Rest. Corp*., No. 14-CV-7850, 2016 WL 8650464, at *7 (S.D.N.Y. Nov. 7, 2016), *adopted by*, 2017 WL 1194682 (S.D.N.Y. Mar. 30, 2017).

Kantor calculates his unpaid wages based on the belief that he should have been paid the agreed-upon rate of $18.75 an hour.  *See* Mem. Supp. ¶ 2 at 8.  During the time period in question, the federal minimum wage was set at $7.25 an hour.  29 U.S.C § 206(a)(1).  Accordingly, this Court finds that Kantor should have been paid at a rate of $18.75 an hour ($750/week) during the course of his employment for Defendants.  *See Kernes,* 2016 WL 880199, at *9 ("[p]laintiff is entitled to recover his unpaid wages in this case as calculated under the NYLL, which would afford him the higher compensation award").

Kantor establishes that he regularly worked five days for an average of forty hours per week over the course of his employment for Defendants.  Kantor Decl. ¶¶ 7-8, 10-11, 15-16.  Kantor attests that Defendants did not provide him with a written wage notice or pay stubs containing his work hours or regular rate of pay.  *Id*. ¶¶ 21-22.  Kantor attests that from September 28, 2016 to December 31, 2016 (13 weeks), Defendant's failed to pay the $9,750.00 he was entitled to in compensation.  *Id*. ¶¶ 7-9.  From January 1, 2017 to December 31, 2017 (52 weeks), Kantor attests that he was entitled to $39,000 in compensation, but he was only paid $3,100 for the entire 2017 period.  *Id*. ¶¶ 10-13.  Thus, Kantor establishes that he is owed $35,000.00 in compensation for all worked performed in the 2017 period ($39,000 - $3,100).  *Id*. ¶ 14.  From January 1, 2018 to March 23, 2018 (12 weeks), Kantor attests Defendants failed to pay him the $9,000 he was owed in compensation.  *Id*. ¶¶ 15-18.

This evidence provides sufficient basis for relief in a default judgment action such as this one.  *See Kotuwage v. NSS Petroleum Inc*., No. 15-CV-4374, 2018 WL 1189332, at *8

(E.D.N.Y. Feb. 8, 2018) (recommending that employer be held liable when plaintiff alleged he did not receive any paystub or wage statements, in light of employer's default and failure to contradict plaintiff's allegations and credible declaration) (citing *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 42-3 (E.D.N.Y. 2015)), *adopted as modified sub nom.*, *Mudun Kotuwage v. Bilt Petroleum*, Inc., 2018 WL 1187397 (E.D.N.Y. Mar. 7, 2018); *see also Da Silva v. Bennet St. Dev. Corp.*, No. 05-CV-2989, 2010 WL 11651766, at \*4 (E.D.N.Y. Sept. 24, 2010), *adopted by*, No. 05-CV-2989, 2010 WL 11651765 (E.D.N.Y. Oct. 21, 2010) (holding that "in the default context, where the defendants have failed to dispute plaintiffs' allegations, plaintiffs have provided a sufficient basis for determination of damages," even though plaintiff's submissions, which consisted of sworn declarations were "sparse, at best,").

Therefore, Kantor's allegations are sufficient to conclude that Defendants violated the NYLL and FLSA by failing to pay the minimum wage, and award the applicable underpayment of $54,650.00 pursuant to NYLL § 191. The following chart outlines the numbers used to reach this calculation:

| Work Period | Hours worked Per Week | Agreed-upon Wage Rate | Actual Wages Paid | Wages Owed | Underpaid Regular Wages |
|---|---|---|---|---|---|
| September 28, 2016 - December 31, 2016 | 40 hrs / 13 weeks | $750 ($18.75/hr) | 0 | $9,750.00 | $9,750.00 |
| January 1, 2017 - December 31, 2017 | 40 hrs / 52 weeks | $750 ($18.75 /hr) | $3,100 | $39,000 | $35,900.00 |
| January 1, 2018 - March 23, 2018 | 40 hrs / 12 weeks | $750 ($18.75 /hr) | 0 | $9,000 | $9,000 |
| | | | | | Total Money Owed= $54,650 |

### ii. Liquidated Damages

Kantor seeks liquidated damages in an amount equal to 100% of the total wages owed to him under both the NYLL and FLSA. *See* Compl. ¶ E at 10; Mem. Supp ¶ 6 at 2. Under the

FLSA, a district court is generally required to award liquidated damages in the amount of actual damages for unpaid minimum wage and overtime compensation unless the employer can show that it acted in good faith and had reasonable grounds for believing that it was compliant with the FLSA. *See Barfield*, 537 F.3d at 150 (citing 29 U.S.C. § 216(b)). The NYLL also provides for liquidated damages in the amount of actual damages unless an employer "proves a good faith basis for believing that its underpayment of wages was in compliance with the law." NYLL § 198(1-a). However, where a plaintiff seeks liquidated damages under both the FLSA and NYLL, double recovery is generally unavailable. *See Thompson*, 2020 WL 5822455, at *9 (citing *Chowdhury v. Hamza Express Food Corp.*, 666 F. App'x. 59, 60 (2d Cir. 2016)).

Here, Kantor is entitled to recover "one hundred percent of the total amount of wages found to be due" under the NYLL because Defendants' default establishes that they "are unable to present evidence of good faith." *Id*. (citing *Rowe v. CC Rest. & Bakery, Inc.*, 2019 WL 4395158, at *9 (E.D.N.Y. Aug 15,2019); *Santillan v. Henao*, 822 F. Supp. 2d 284, 297 (E.D.N.Y. 2011) ("Many courts have found that a defendant's default, in itself, may suffice to support a finding of willfulness" for purposes of granting liquidated damages)).

Accordingly, I recommend that this court award Kantor 100% of the total wages owed to him, which equals to $54,650, as liquidated damages pursuant to the NYLL.

### iii. Written Notice and Wage Statement Violations

Kantor alleges that he did not receive required wage notice or wage statements in violation of section 195 of the NYLL. *See* NYLL § 195(1) (setting forth requirement that employers provide written notice of rate of pay to employees at the time of hiring); NYLL §195(3) (setting forth requirement that employers provide employees a written statement with each payment of wages, listing the dates covered by payment, the regular rate of pay, the

overtime rate, and the number of hours worked).  Kantor seeks $5,000 in penalties from Defendants for their failure to provide the requisite wage notice, and $5,000 for their failure to provide the required wage statements.  *See* Compl. ¶¶ 67, 71.

New York law provides that an employee who does not receive a wage notice, under § 195(1), "may recover . . . damages of fifty dollars each work day that the violations occurred . . . but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees."  NYLL § 198(1-b).  An employee who does not receive a wage statement, under § 195(3), "shall recover . . . damages of two hundred fifty dollars for each workday that the violations occurred . . . but not to exceed a total of five thousand dollars[.]"  NYLL § 198(1-d).

Kantor alleges that "[D]efendants never provided [him] with any sort of written notice regarding: [his] regular rate of pay, overtime rate, how [he] was to be paid . . . nor allowances taken as part of the minimum wage."  Kantor Decl. ¶ 21, *see also* Compl. ¶¶ 65, 66.  Additionally, Kantor alleges that "[D]efendants also never provided [him] with a detailed paystub each time it paid [him] in cash."  Kantor Decl. ¶ 22, *see also* Compl. ¶ 70.  Kantor's allegations suffice to establish that Defendants are liable for failing to provide the requisite wage notices and wage statements under New York law for the entirety of Kantor's employment from 2016 to 2018.  Compl. ¶¶ 66-67, 70-71; Mem. Supp at 8-9; s*ee also Thompson*, 2020 WL 5822455, at *10 (finding Defendants liable for violation NYLL § 195(1) and § 195(3) where Plaintiff made similar allegations).

Accordingly, Kantor is entitled to recover $50 per workday because of Defendants' failure to provide him with the wage notices required by NYLL § 195(1), for a total penalty of $5,000.  Kantor is also entitled to recover $250 per workday because of Defendants' failure to provide him the wage statements required by NYLL § 195(3), for a total penalty of $5,000.

### iv. Pre-Judgment Interest

Kantor seeks to recover prejudgment interest on the compensatory damages awarded under the NYLL, calculated at a rate of 9% per year.  *See* Mem. Supp. at 14; *see also* C.P.L.R. § 5004.  Prejudgment interest can be awarded under the NYLL, but not under the FLSA.  *Apolinar v. Glob. Deli & Grocery, Inc.,* No. 12-CV-3446, 2013 WL 5408122 at \*12 (E.D.N.Y. Sept. 25, 2013).  Liquidated damages and prejudgment interest serve fundamentally different purposes under the NYLL, so they may both be awarded.  *Id.* (reasoning that liquidated damages under the NYLL are meant to "constitute a penalty" on an employer's willful withholding of wages due, while prejudgment interest serves "to compensate a plaintiff for the loss of use money").

Where, as here, the unpaid wages were "incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."  N.Y. C.P.L.R. § 5001(b).  Courts have discretion in selecting a reasonable date from which to award pre-judgment interest, such as the midway point between when the plaintiff began and ended work if damages were incurred at various times.  *See Fermin*, 93 F. Supp. 3d at 49; *see also Santillan*, 822 F. Supp. 2d at 298.

Kantor alleges that he is entitled to $4,918.50 in prejudgment interest.  *See* Mem. Supp. at 14.  However, Kantor did not use a reasonable intermediate date to calculate this figure.  Instead Kantor calculated the interest rate from September 28, 2016, the date his employment began.  *Id.*; *see also* CPLR 5001(b).  Therefore, this Court declines to adopt Kantor's suggested figure.  *See Israel v. Benefit Concepts New York, Inc*., 9 F. App'x 43, 45 (2d Cir. 2001) (summary order) (failing to use a single reasonable intermediate date or to calculate from each date damages were incurred "affords the plaintiff a windfall, and hence penalizes the defendant, in contravention of the compensatory purpose of [CPLR] 5001").

This Court calculates 541 days between Kantor's start date on September 28, 2016 and his end date on March 23, 2018.  Compl. ¶¶ 21, 36.  Accordingly, the midpoint of his employment is June 25, 2017, 270 days after his start date on September 28, 2016.  *See Thompson*, 2020 WL 5822455, at *11 (calculating midpoint by using total number of days between start date and end date).  Excluding liquidated damages, Kantor's actual damages under the NYLL are $54,650.00.  To calculate the per diem interest rate, the court multiplies the statutory rate of 9% per annum by the total damages awarded to plaintiff under the NYLL, [(0.09/365) x $54,650] which yields a per diem rate of $13.48.

Accordingly, it is respectfully recommended that that the District Court calculate the interest award to Kantor by multiplying the daily prejudgment interest rate, $13.48, by the number of days between June 25, 2017 and the date judgement is entered.  *See Id.* (citing V*alerio v. K.A.M. Food Store, Inc*., No. 19-CV-7764707, 2019 WL 7764707, at *8 (E.D.N.Y. Dec. 26, 2019)).

### v.  Attorney's Fees

Kantor requests that the court award him $14,000 in attorney's fees incurred in the prosecution of this action.  Odige Aff. ¶¶ 10; Mem. Supp. at 5.  The FLSA and the NYLL both provide for this recovery in the event of successful wage protection claims.  *See* 29 U.S.C. § 216(b); NYLL §§ 198(4), 663(4).  The same analysis applies to determine the fee under both statutes. *See Perdue v. Kenny A., * 559 U.S. 542, 548, 130 S. Ct. 1662, 1670, 176 L. Ed. 2d 494 (2010) (courts use the "lodestar method" to calculate reasonable attorneys' fees).  However, in order for the movant to establish the number of hours an attorney reasonably spent on a case, "it must document the application with contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." *See Marion S. Mishkin*

20

*Law Office v. Lopalo*, 767 F.3d 144, 148 (2d Cir. 2014) (citing *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)) (alteration in original) (internal quotation marks omitted); *see also LV v. New York City Dep't of Educ.*, 700 F. Supp. 2d 510, 524 (S.D.N.Y. 2010) (noting that the requirement applies to paraprofessionals as well as attorneys).

Here, Kantor provides no evidence of contemporaneous time records to support his request for $14,000 in attorney's fees.  Mem. Supp. at 15.  Instead, Kantor's attorney simply affirms that "[a] total of 40 hours has been rendered by her in this matter, at a rate of $350 per hour," which in "[her] opinion and belief, based on [her] experience in comparable litigation, . . . represents the fair and reasonable value of the attorneys' services and is equal to or less than the usual fee charged by attorneys for comparable services in New York City."  Odige Aff. ¶ 10.  Moreover, Kantor's attorney has failed to present any evidence that contemporaneous time records were kept at all.  *See J & J Sports Prods., Inc. v. James*, No. 17-CV-5359, 2019 WL 2278143, at *2-3 (E.D.N.Y. Mar. 5, 2019), *adopted by*, 2019 WL 1403112 at *2 (E.D.N.Y. Mar. 28, 2019) (denying fees because billing records were not contemporaneous).

Courts in this Circuit have routinely declined to award attorney's fees in the absence of contemporaneous time records, including in cases brought under the FLSA and the NYLL.  *Scott v. City of New York*, 643 F.3D 56, at 58 ("[a]n award based entirely on the district court judge's personal observation and opinions of the applying attorney … is contrary to *Carey* and must be vacated"); *Hosking v. New World Mortg., Inc*., No. 07-CV-2200, 2012 U.S. Dist. Lexis 184192, at *12 (E.D.N.Y. Dec. 20, 2012) (denying attorney's fees where plaintiff did not submit contemporaneous time records to the court), *adopted by*, 2013 U.S. Dist. Lexis, at *23; *Jianhui Hu v. 226 Wild Ginger, Inc*., No. 17-CV-10161, 2020 U.S. Dist. Lexis 165818, at *3 (S.D.N.Y.

Sept. 10, 2020).  Kantor's attorney has provided no controlling authority suggesting that this Court can deviate from the contemporaneous record requirement set forth in *Carey*, 711 F.2d 1136, and its progeny.  Therefore, Kantor's request for $14,000 in attorney's fees must be denied.

### vi.  Costs

"Reasonable out-of-pocket expenses are generally reimbursed as a matter of right in connection with an award of attorney's fees."  *Cortes v. Warb Corp.*, No. 14-CV-7562, 2016 WL 1266596, at *6 (E.D.N.Y. Mar. 15, 2016).  The party moving to recover attorney's fees and costs has the burden of demonstrating the reasonableness of each charge, and the lack of adequate documentation of the costs incurred will limit, or possibly even defeat such recovery. *See, e.g., Piedra v. Ecua Rest., Inc*., 2018 WL 1136039, at *20 (citing *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt*., No. 04-CV-2293, 2009 WL 5185808 at *9-10 (E.D.N.Y. Dec. 23, 2009) (reducing award of costs where certain costs were not properly documented)).

Here, Kantor seeks to recover $593.000 in costs, including the $400 filing fee for the complaint, and a $193 service of process fee associated with the filing and service of the Summons and Complaint.  Mem. Supp. at 16; Odige Aff. ¶¶ 12, 13.  Kantor is entitled to recover the $400 filing fee charge, as it appears on the docket and is easily verifiable.  *See* Compl., ECF No. 1.  However, Kantor has failed to substantiate his request for the $193 service of process fee with adequate documentation, and therefore this request must be denied.  *See Callari v. Blackman Plumbing Supply, Inc*., No. 211-CV-3655, 2020 WL 2771008, at *17 (E.D.N.Y. May 4, 2020), *adopted by*, No. 211-CV-3655, 2020 WL 2769266 (E.D.N.Y. May 28, 2020) (declining to award costs due to an absence of documentation).

## IV.    CONCLUSION

For the foregoing reasons, I respectfully recommend that Kantor's Motion for Default Judgement be GRANTED. This court further recommends finding Defendants jointly and severally liable under the FLSA and the NYLL, and entering judgement against Defendants in the amount of $119,700. That amount consists of $54,650.00 in underpaid wages, $54,650.00 in liquidated damages, $10,000 in statutory damages for written notice and wage statement violations, and $400 in costs.

Kantor's counsel is directed to serve copies of this Report and Recommendation upon Defendants at their respective last known address and to file proof of service with the Court within three (3) days of the date of filing of this Report and Recommendation.

## V.    OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Marcella v. Capital Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 46 (2d Cir. 2002); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989); *see also Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

**SO ORDERED.**

_____/s/_____

Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
July 7, 2021

23