UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

ALEXANDRE KANTOR,

                Plaintiff,            **MEMORANDUM & ORDER**
                                                  19-CV-3597(EK)(ST)

         -against-

AIR ATLANTIC MEDICAL, P.C., and
ALEXANDER IVANOV, M.D.,

                Defendants.

-------------------------------------x
ERIC KOMITEE, United States District Judge:

        Plaintiff Alexandre Kantor brought this suit against Defendants Air Atlantic Medical, P.C. ("Air Atlantic") and Dr. Alexander Ivanov in June 2019.  Kantor alleges that the defendants violated the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").  After making one filing — an answer that was untimely filed in August 2019 — and appearing at an initial conference, the defendants otherwise failed to defend the lawsuit for nearly two years.  As a result, the Court entered a default judgment against them on September 1, 2021.  Ten months later, Defendants moved to vacate that judgment, citing defense counsel's leukemia diagnosis and treatment as one of several reasons for their extended failure to appear.[1]

---

[1] Defense counsel filed this motion and supporting declaration on the docket, with no request for sealing.

Neither counsel's diagnosis, however, nor any other proffered reason explains the raft of missed deadlines, appearances, and other omissions in this case, many of which predate that diagnosis.  For the reasons set out below, Defendants' motion is denied.

## I.    Background

### A.    Defendants' Years-Long Failure to Defend and the Court's Entry of Default Judgment

Prior orders detail this case's procedural history, *see* Sept. 23, 2020 Report and Recommendation 1-3 ("Sept. 23, 2020 R&R"), ECF No. 19; July 7, 2021 Report and Recommendation ("July 7, 2021 R&R") 2-3, ECF No. 28, but it bears reviewing that history at some length here.

Kantor initiated this FLSA and NYLL action against Defendants on June 19, 2019.  Compl., ECF No. 1.  He alleges that between September 2016 and March 2018, he worked at Air Atlantic, a medical office, as a "Manager/Practice Administrator" and was responsible for overseeing the office's administration and operations.  *Id.* ¶¶ 8, 21-22, 36.  Defendant Ivanov was Kantor's supervisor.  *Id.* ¶ 11.  Throughout the entirety of his employment, Kantor alleges, Defendants consistently failed to pay him his agreed upon weekly salary, and in doing so, also failed to pay him the statutory minimum wage.  *Id.* ¶¶ 19-20.

Plaintiff effectuated service on July 10, such that Defendants' response to the complaint, according to Plaintiff, was due by July 31.  *See* ECF No. 9.  Three weeks after this deadline had passed, Magistrate Judge Steven Tiscione noted that the defendants' time to respond to the complaint had "expired" and asked Plaintiff for a status report on how to proceed with the case.  Docket Order dated Aug. 22, 2019.  Defendants filed an answer on the following day, without any explanation for their lateness.  ECF No. 10.[2]  Defendants then appeared at an initial status conference on October 2, 2019, at which Judge Tiscione set a schedule for completing discovery and referred the parties to the court-annexed mediation program.  Minute Entry dated Oct. 2, 2019, ECF No. 14.

For the next two and a half years, Defendants failed to participate in or otherwise defend the lawsuit.  In a January 17, 2020 letter to the court, Plaintiff requested that Judge Tiscione "cancel" the mediation referral, because defense counsel had failed to respond to numerous communications sent by Plaintiff's counsel and the Court's alternative dispute resolution ("ADR") department regarding the selection of a mediator.  *See* ECF No. 15; ECF No. 38-1 (email correspondence

---

[2] Defense counsel never filed the required corporate disclosure statement, *see* Fed. R. Civ. P. 7.1, despite being advised by court staff on August 26, 2019 to do so.

dated October 28, 2019 through December 9, 2019).  In response, that same day, Judge Tiscione scheduled an in-person status conference for the following week, ordering that "[c]ounsel for all parties must attend."  Docket Order dated Jan. 17, 2020.

Defense counsel failed to appear at that January 23 status conference.  Minute Entry dated Jan. 27, 2020, ECF No. 16.  Judge Tiscione ordered Defendants to appear on February 6 and show cause why, in light of their failure to defend, the Court should not recommend entry of a default judgment.  *Id.*  He also ordered defense counsel to show cause why he should not be sanctioned for his failure to appear.  *Id.*

Defense counsel then failed to appear at the February 6 show-cause hearing.  Minute Entry dated Feb. 7, 2020, ECF No. 17.  In his stead, he sent an attorney who had not appeared in the case and was not admitted to practice in this district.  *Id.* Judge Tiscione noted that defense counsel "did not contact the Court" to explain his absence, "failed to take any steps towards selecting a mediator," and "failed to respond in any way" to the Court's January 23 order to show cause.  *Id.*

On March 24, 2020, defense counsel failed to appear yet again for a telephone conference and "made no effort to contact the Court or Plaintiff's counsel."  Minute Entry dated Mar. 26, 2020, ECF No. 18.  Judge Tiscione once again ordered Defendants to show cause why the Court should not recommend

default judgment — this time for "Defendants' complete lack of participation in this case." *Id.* Defendants once more did not comply.

On September 23, 2020, Judge Tiscione issued *sua sponte* a Report and Recommendation ("R&R"), recommending that, in light of Defendants' failure to appear at several conferences and failure to respond to the orders to show cause, the Court strike Defendants' answer, assess monetary sanctions against defense counsel, and permit Kantor to move for default judgment. *See* Sept. 23, 2020 R&R 1, 5-6. Defendants did not object to Judge Tiscione's R&R. This Court adopted that R&R on December 4, 2020, ECF No. 21, and the Clerk of Court entered default pursuant to Federal Rule of Civil Procedure 55(a) on that same day, ECF No. 22.

Kantor moved for default judgment against Defendants on January 19, 2021. ECF No. 24. Defendants then failed to respond to Kantor's motion, which this Court referred to Judge Tiscione for a report and recommendation. Judge Tiscione recommended the entry of default judgment, *see* July 7, 2021 R&R 23, and Defendants filed no objection to that R&R. This Court then adopted the R&R on August 31, 2021, ECF No. 30, and a default judgment against Defendants issued the next day, ECF No. 31.

**B.    Defendants' Motion to Vacate Default Judgment and Kantor's Efforts to Enforce the Judgment**

Over ten months later, Defendants moved to vacate the default judgment pursuant to Rule 60(b)(1) and Rule 60(b)(6). Mem. of Law in Supp. of Def. Mot. to Vacate Default J. ("Def. Mot.") 5–8, ECF No. 33-2.  They cite defense counsel's (unquestionably serious) leukemia diagnosis and treatment as the primary reason for the extended failure to appear.  *See* Robbins Decl. ¶ 9, ECF No. 33-1; Def. Mot. 6.

While briefing on Defendants' motion was ongoing, Kantor took steps to collect the damages amount awarded pursuant to the default judgment.  On August 25, 2022, at Defendants' request, the Court temporarily stayed "proceedings to enforce the judgment" after Kantor attempted to collect via a sheriff's sale of Ivanov's real property in Pennsylvania scheduled for that day.  *See* Docket Order dated Aug. 25, 2022.  That order provided that the stay would be effective "through the end of the day on August 29, 2022" and would continue in effect "if, but only if, Defendants post[ed] a bond with sufficient surety for 110 percent of the principal amount of the judgment" or if the Court approved "an alternate form of security."  *Id.* Defendants did not post a bond or propose an alternative security arrangement by August 29, and the stay accordingly expired on that day.

Two months later, on October 26, 2022, Defendants asked the Court once again to stay Kantor's attempts to collect via a sheriff's sale scheduled for the following day.  ECF No. 43.  This time, the Court denied the stay request, noting that Defendants had failed to comply with the Court's prior order requiring them to post bond and observing (without deciding) that they had little chance of success on the merits of their motion to vacate the default judgment.  ECF No. 45.

On December 16, 2022, Kantor filed a satisfaction of judgment, stating that a "full and complete satisfaction" of the judgment had been made.  ECF No. 46.

## II.  Legal Standard

Under Rule 60(b), the district court may set aside entry of a default judgment for "excusable neglect," or for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(1), (6); *see also* Fed. R. Civ. P. 55(c) (providing that final default judgments may be set aside under Rule 60(b)).  The Second Circuit has expressed a "strong preference for resolving disputes on the merits," instructing courts to resolve all doubts "in favor of the party seeking relief from the judgment." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).[3]

---

[3] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

Courts assess three criteria in considering whether to vacate a default judgment: "(1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice." *SEC. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). Of these factors, "willfulness is preeminent, and a willful default will not normally be set aside." *Finkel v. Hall-Mark Elec. Supplies Corp.*, No. 07-CV-2376, 2011 WL 2847407, at *3 (E.D.N.Y. July 13, 2011); *see Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 507 (2d Cir. 1991) ("A default should not be set aside when it is found to be willful.").

### III. Discussion

**A.   Relief under Rule 60(b)(1) Is Denied**

1.   <u>Defendants' Default Was Willful</u>

Willfulness in this context "refer[s] to conduct that is more than merely negligent or careless." *McNulty*, 137 F.3d at 738.  A default may be willful "where the conduct of counsel or the litigant was egregious and was not satisfactorily explained." *Id.*  Moreover, courts have "rather consistently refused to relieve a client of the burdens of a final judgment entered against him due to the mistake or omission of his attorney." *United States v. Cirami*, 535 F.2d 736, 739 (2d Cir. 1976).  Thus, "where the attorney's conduct has been found to be

8

willful, the willfulness will be imputed to the party himself
where he makes no showing that he has made any attempt to
monitor counsel's handling of the lawsuit." *McNulty*, 137 F.3d
at 740.

Defendants' default was willful.  After making one
filing — an untimely answer in August 2019 — and appearing at an
initial conference in October 2019, the defendants failed to
defend the lawsuit for over two and a half years.  Nor do
Defendants offer any evidence of their own diligence, distinct
from defense counsel's failures, in monitoring this case.  None
of Defendants' excuses adequately explain their complete failure
to participate in this action, or otherwise persuade the Court
that the default was anything but willful.

Addressing Defendants' arguments in chronological
order, defense counsel first asserts that Kantor and Defendants
are involved in concurrent litigation in New York Supreme Court,
Kings County, which caused "confusion in [his] office over the
lawsuits."  Robbins Decl. ¶¶ 5-7; *see* Def. Mot. 6.  According to
counsel, the state court action was filed on November 28, 2018,
and "concerned the same exact subject matter" as this suit.  *Id.*
¶¶ 5-6.  Kantor disputes this characterization, arguing that
Kantor's "state court claim is a § 1983 case, false arrest, and
false imprisonment lawsuit against the NYPD," distinct from this

FLSA and NYLL wage action.  Pl. Mem. of Law in Opp. of Def. Mot. ("Pl. Opp.") 13, ECF No. 37.

Some courts have held that a default is not willful "when a defendant confuses two concurrent legal proceedings pertaining to similar subject matter in which he is simultaneously involved." *Gil v. Frantzis*, No. 17-CV-1520, 2019 WL 4784674, at *6 (E.D.N.Y. Oct. 1, 2019) (collecting cases); *see Murray Eng'g, P.C. v. Windermere Props. LLC*, No. 12-CV-52, 2013 WL 1809637, at *4-5 (S.D.N.Y. Apr. 30, 2013).  Many such cases, however, involve a mix-up over two similar legal proceedings by a lay party — not by the party's engaged counsel. In *Gil*, for example, the default judgment was deemed not willful where the defendant had disregarded legal papers served in a federal lawsuit against her, believing that they were related to an ongoing state agency proceeding on the same subject matter, because these "distinctions would be lost upon a lay defendant with no legal training."  *See* 2019 WL 4784674, at *3, *6. Defense counsel can claim no such similar excuse.

Even crediting this argument, any mix-up by defense counsel only plausibly accounts for some small portion of Defendants' failure to appear or defend.  After failing to timely respond to Kantor's complaint, defense counsel *did* appear and participate in this matter, filing an answer and appearing for an initial pretrial conference.  ECF Nos. 10, 14.  Moreover,

after missing the January 23, 2020 status conference, "an attorney from [defense counsel's] office was sent to appear in court [on February 6], believing it was the Supreme Court matter, and not until he was there did[] he learn it was in the District Court."  Robbins Decl. ¶ 7.  Any initial confusion between the federal and state court proceedings should have been resolved in the fall of 2019, when Defendants answered and appeared at the initial pretrial conference, and then again in early February 2020, when defense counsel's law office was on notice (once more) that the two cases were, in fact, distinct.

Defense counsel next cites his illness as the primary reason for Defendants' lengthy absence from the case.  He states that he "was not in a position to respond and was unaware of certain actions taken on this matter" because "[f]rom approximately May, 2020, [he] was diagnosed and treated for leukemia."  Robbins Decl. ¶ 9.  Six months after his initial treatment, a surgery and related complications "resulted in further hospitalizations and treatments."  *Id.*  Defense counsel did not attach any relevant medical evidence or provide any additional details on the timing of his recovery, only stating that he is "now back working full time."  *Id.*

"[I]llness alone," however, "is not a sufficient basis for setting aside a judgment under Rule 60(b)(1)."  *Gesualdi v. J.H. Reid, Gen. Contractor*, No. 14-CV-4212, 2017 WL

11

752157, at *5 (E.D.N.Y. Feb. 27, 2017) (collecting cases); *see also Lehr Constr. Corp. v. Flaxer*, No. 16-CV-4048, 2017 WL 464428, at *4 (S.D.N.Y. Feb. 2, 2017) ("While courts will occasionally rely on the illness or disability of a party or attorney when finding excusable neglect, these cases involve extraordinary circumstances, such as a sudden, unexpected, or catastrophic illness, or the party has pointed to specific facts and circumstances demonstrating why the illness or disability caused them to miss the original deadline."). "This is particularly true when the attorney claiming to have been ill for Rule 60(b) purposes failed during the course of the litigation to sufficiently communicate with opposing counsel or the Court regarding the serious nature of his medical condition, or to avail himself of procedural safeguards designed to afford litigants and their counsel reasonable extensions of time and other leniencies." *Gesualdi*, 2017 WL 752157, at *6.

In any case, and critically, counsel's May 2020 diagnosis does not account for Defendants' failure to follow court orders or defend the case beginning well before that date, including: Defendants' failure to timely respond to the complaint; defense counsel's failure to respond to numerous communications from Kantor and the Court's ADR department regarding mediation; his failure to appear at scheduled conferences on January 23, February 6, and March 24, 2020; and

12

his failure to respond to the Court's orders to show cause issued in connection with those absences. *See Kingvision Pay-Per-View Ltd. v. La Aroma Del Cafe, Inc.*, No. 02-CV-0786, 2006 WL 842398, at *2 (E.D.N.Y. Mar. 27, 2006) (rejecting argument that illness could justify a failure to prosecute during the time after counsel's recovery). Thus, well before the time of his diagnosis, Defendants' counsel had already established a pattern of failing to appear or communicate with either Plaintiff or the Court. *See Andree v. Ctr. for Alternative Sent'g & Emp. Servs., Inc.*, No. 92-CV-616, 1993 WL 362394, at *2 (S.D.N.Y. Sept. 14, 1993) (observing, in refusing to vacate a summary judgment order, that the "pattern of negligence cannot be attributed solely to counsel's [medical] problem").

Counsel's illness, moreover, does not explain Defendants' complete failure to communicate with Kantor or the Court for more than two years, from the time of his diagnosis until the filing of this motion, "to apprise them of the serious nature of his medical condition he now claims to be the reason for his misfeasance." *Carcello v. TJX Companies, Inc.*, 192 F.R.D. 61, 64 (D. Conn. 2000).[4] Based on the limited facts

---

[4] It appears that defense counsel's diagnosis did not prevent the state court action between Kantor and Defendants from progressing. Defendants' submissions indicate that Kantor was deposed on October 29, 2020, and a "Mr. Robbins" was present and asking questions as Defendants' counsel. *See, e.g.*, Ex. A, Kantor Dep. Tr. 10:19, 11:4, 13:2, ECF No. 42-2.

available to the Court, this illness was not so "sudden, unexpected, or catastrophic" as to excuse his complete disregard of the case during that time period. *Cf. Lehr Constr. Corp.*, 2017 WL 464428, at *4 (finding no excusable neglect for failure to file timely bankruptcy appeal).

Defense counsel's related argument — that, during his illness, another attorney at his law office was responsible for the matter but "left due to a pregnancy," *see* Robbins Decl. ¶ 9 — fares no better. Courts have refused to find excusable neglect in similar cases where counsel's inaction was due to a firm's inability to staff or manage its caseload appropriately. *See, e.g.*, *Dixon v. A Better Way Wholesale Autos, Inc.*, No. 15-CV-69, 2016 WL 6519116, at *2 (D. Conn. July 22, 2016), *aff'd*, 692 F. App'x 664 (2d Cir. 2017) (finding argument that two associates who were responsible for case had left the law firm insufficient to establish excusable neglect); *see also Nemaizer v. Baker*, 793 F.2d 58, 62 (2d Cir. 1986) ("[W]e have consistently declined to relieve a client[, under Rule 60(b)(1),] of the burdens of a final judgment entered against him due to . . . his [attorney's] inability to efficiently manage his caseload.").

The Court thus finds that Defendants' default was egregious and willful, weighing against vacating the default judgment.

2.   <u>Defendants Raise a Potentially Meritorious Defense</u>

The party seeking to set aside the default judgment next has the "burden of offering evidence sufficient to establish a complete defense." *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015). "In order to make a sufficient showing of a meritorious defense[,] the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a complete defense." *Green*, 420 F.3d at 109. At this stage, "a defendant must present more than conclusory denials when attempting to show the existence of a meritorious defense." *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 173 (2d Cir. 2001).

Defendants assert, as a defense, that Kantor was never an employee of either Air Atlantic or Ivanov. Def. Mot. 7–8; Def. Reply Br. ("Def. Reply") 6–8, ECF No. 42. Instead, they argue, Kantor was an employee of Fortune Solutions, LLC ("Fortune Solutions"), a third-party company that provided consulting services to Air Atlantic and a separate doctor. Def. Reply 7–8. In support of this argument, Defendants provided a sworn affidavit by Ivanov, as an individually named defendant and the medical director of Air Atlantic, *see* Ivanov Aff., ECF No. 42-1, and an excerpt of Kantor's deposition in the state court proceeding, *see* Ex. A, Kantor Dep. Tr. They also offered

what they assert are photocopies of checks written by Air
Atlantic to Fortune Solutions and Kantor, respectively. *See* Ex.
B, ECF No. 42-3; *see* Ex. C, ECF No. 42-4.  Evidence that checks
written to Fortune Solutions were deposited into the same
account as those written to Kantor, Defendants argue, further
indicates that Kantor had some economic relationship with
Fortune Solutions, but not Air Atlantic or Ivanov.  Def. Reply
8; Ivanov Aff. ¶¶ 14-16.

        Before addressing the merits of this potential
defense, the Court turns briefly to the question of whether it
should even consider this supporting evidence offered by
Defendant.  Defendants' motion includes the general, conclusory
denials that are insufficient to demonstrate a meritorious
defense. *See Pecarsky*, 249 F.3d at 173.  Only after Plaintiff
pointed out these conclusory denials, as well as Defendants'
failure to raise a defense under the applicable Second Circuit
law, *see* Pl. Opp. 11-12, did Defendants then submit this factual
evidence and offer a more robust analysis in their reply.

        In other circumstances, "a party may not attempt to
cure deficiencies in its moving papers by including new evidence
in its reply to opposition papers." *Burroughs v. Cnty. of
Nassau*, No. 13-CV-6784, 2014 WL 2587580, at *13 (E.D.N.Y. June
9, 2014); *see Revise Clothing, Inc. v. Joe's Jeans Subsidiary,
Inc.*, 687 F. Supp. 2d 381, 387 (S.D.N.Y. 2010) ("It is plainly

16

improper to submit on reply evidentiary information that was available to the moving party at the time that it filed its motion and that is necessary in order for that party to meet its burden."). Thus, a court has the discretion to strike the evidence and not consider it for purposes of the motion. *See Wolters Kluwer Fin. Servs. Inc. v. Scivantage*, No. 07-CV-2352, 2007 WL 1098714, at *1 (S.D.N.Y. Apr. 12, 2007). Nevertheless, given the Second Circuit's mandate that courts resolve doubts in the movant's favor, *see Green*, 420 F.3d at 104, the Court will, in its discretion, consider this evidence.

Defendants argue that the "economic reality" of the situation demonstrates that Kantor and Defendants did not have an employee-employer relationship within the meaning of the FLSA. *See* Def. Reply Br. 6-8 (analyzing the factors set out in *United States v. Silk*, 331 U.S. 704 (1947)). Ivanov attests, among other things, that he worked with only one other employee, a part-time secretary; that he never entered into any agreement with Kantor regarding the provision of services or compensation; and that Kantor never provided any services to him in his medical practice. *See* Ivanov Aff. ¶¶ 3-8, 17. Ivanov's assertions are generally uncorroborated at this stage. Nevertheless, if proven at trial, they might constitute a meritorious defense, at least with respect to Plaintiff's FLSA claims. *See, e.g.*, *Saleem v. Corp. Transp. Grp., Ltd.*, 854 F.3d

131, 140 (2d Cir. 2017) (affirming summary judgment for defendant where the "underlying economic reality of the relationship" established that plaintiffs were not employees); *Weingeist v. Tropix Media & Ent.*, No. 20-CV-275, 2022 WL 970589, at *11 (S.D.N.Y. Mar. 30, 2022) (finding argument, supported by affidavit evidence, that plaintiff was not an employee constituted a meritorious defense to FLSA claims); *Lopez v. Traffic Bar & Rest. Inc.*, No. 12-CV-8111, 2015 WL 545190, at *5 (S.D.N.Y. Feb. 9, 2015) (Francis, M.J.) (same).[5]

Defendants' ability to raise a potentially meritorious defense therefore weighs in favor of vacating the default judgment.

3.  Kantor Faces Slight Prejudice from Vacatur of the Default Judgment

Finally, courts consider "the level of prejudice the non-defaulting party will suffer if the motion to vacate is granted." *King v. Galluzzo Equip. & Excavating Inc.*, 223 F.R.D. 94, 99 (E.D.N.Y. 2004). A party may demonstrate prejudice by

---

[5] Defendants do not separately analyze whether Kantor would be considered an employee for purposes of the NYLL, which entails a similar but "slightly different" inquiry. *Velu v. Velocity Exp., Inc.*, 666 F. Supp. 2d 300, 306-07 (E.D.N.Y. 2009) ("Instead of focusing on the economic reality of the situation, New York law focuses on the degree of control exercised by the purported employer over the results produced or the means used to achieve the results."). The Court assumes, without deciding, that Defendants' arguments apply with equal force to Kantor's NYLL claims. *See Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 924 (S.D.N.Y. 2013) ("There is general support for giving FLSA and the New York Labor Law consistent interpretations.").

showing that his "ability to pursue the claim has been hindered since the entry of the judgment," or through "the loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment." *Id.* Delay alone, however, "is not a sufficient basis for establishing prejudice"; instead, "[s]omething more" regarding the consequences of the delay "is needed," such as the risk that delay "may thwart plaintiff's recovery or remedy." *Green*, 420 F.3d at 110.

Kantor argues prejudice resulting from Defendants' complete failure "to take part in any discovery in this case," which the parties should have completed in July 2020. Pl. Opp. 12–13. Some courts have found prejudice where the defaulting party had repeatedly failed to cooperate with discovery requests. *See, e.g.*, *King*, 223 F.R.D. at 99. Similarly, a plaintiff faced prejudice where no discovery had taken place more than twenty months after the complaint was filed; in addition to the "fading of witness memories and loss of evidence," the Court expressed doubts that "defendants [would] cooperate in discovery." *World Magic Int'l AVV v. Eddy Int'l Ltd.*, No. 09-CV-1447, 2010 WL 4457184, at *2 (S.D.N.Y. Nov. 1, 2010).

There is some general risk here of fading memories and spoliated evidence, given that Plaintiff commenced this action back in 2019 and Defendants' failure to participate in the

matter stalled any progress for over two years.  Kantor, however, does not point to any specific concerns regarding the loss of available evidence or an inability to obtain discovery from Defendants in the future.  Any such risks may also be mitigated by the parties' ongoing state proceeding, which at least partially overlaps with this matter with respect to potentially relevant witnesses and documents.

The prejudice that Plaintiff would suffer if the default was vacated therefore weighs slightly in favor of denying Defendants' motion.[6]

4.   <u>Balancing the Factors</u>

In summary, Defendants' default was willful and egregious; Defendants raise a potentially meritorious defense to Kantor's claims; and Kantor would be slightly prejudiced by an order vacating the default judgment.  Thus, the first factor (heavily) and the third factor (slightly) weigh against vacating the default judgment, while the second factor weighs in Defendants' favor.

---

[6] Some courts have also found prejudice where the non-defaulting party has already expended resources to enforce the judgment obtained.  *See Odfjell Seachem A/S v. Cont'l de Petrols et Invs. SA*, 613 F. Supp. 2d 497, 501 (S.D.N.Y. 2009) (finding "obvious prejudice" if a default judgment was vacated after plaintiff had expended considerable time trying to collect its 2004 judgment and was "now, at last, almost fully secured by virtue of the instant attachment").  Although Plaintiff does not assert prejudice on this ground, the fact that he has already enforced the judgment also suggests that he would be prejudiced by an order vacating it.

As noted above, however, the Court need not weigh the factors equally.  Instead, of the factors, "willfulness is preeminent, and a willful default will not normally be set aside." *Finkel*, 2011 WL 2847407, at *3.  For this reason, "district courts in this circuit have repeatedly denied motions to vacate default judgments solely on the basis of the defaulting party's willfulness." *Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839, 2020 WL 6737463, at *6-7 (E.D.N.Y. Nov. 17, 2020) (collecting cases); *World Magic*, 2010 WL 4457184, at *2 ("[D]efendants' willful conduct, standing alone, is sufficient to deny defendants relief.  Negligent defaults may be excusable; *deliberate* defaults are not.").  This includes cases where, similar to here, the court found "a potentially meritorious defense and the absence of prejudice." *Belizaire v. RAV Investigative & Sec. Servs., Ltd.*, 310 F.R.D. 100, 106 (S.D.N.Y. 2015); *see, e.g.*, *Burns v. Kelly Enterprises of Staten Island, LLC*, No. 16-CV-6251, 2019 WL 3304883, at *4 (E.D.N.Y. July 23, 2019) ("Defendants' defenses and prejudice to the non-defaulting party . . . do not outweigh Defendants' willful default").

Because the Court finds that the default in this case was particularly willful, Defendants' ability to raise a meritorious defense and the slight evidence of prejudice to Kantor "do not outweigh Defendants' egregious disregard for the

legal process." *Francis*, 2020 WL 6737463, at *7; *see Belizaire*, 310 F.R.D. at 106 ("The interests of sound and efficient judicial administration warn against encouraging such willful and otherwise inexcusable defaults."). Defendants' motion to vacate the default judgment pursuant to Rule 60(b)(1) is therefore denied.

**B.   Relief under Rule 60(b)(6) Is Denied**

In the alternative, Defendants seek relief under Rule 60(b)(6), which permits the Court to vacate a default judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Under this "catch-all provision," relief is appropriate "only when there are extraordinary circumstances justifying relief, when the judgment may work an extreme and undue hardship." *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 143 (2d Cir. 2020). "[I]f the reasons offered for relief from judgment can be considered in one of the more specific clauses of Rule 60(b), such reasons will not justify relief under Rule 60(b)(6)." *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391–92 (2d Cir. 2001). "This is true even where the relief sought pursuant to a more specific Rule 60(b) clause is denied." *In re Pinnock*, 833 F. App'x 498, 502 (2d Cir. 2020). Thus, "[w]here a party's Rule 60(b) motion is premised on grounds fairly classified as mistake,

inadvertence, or neglect, relief under Rule 60(b)(6) is foreclosed." *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012).

Defendants argue that relief under Rule 60(b)(6) is appropriate because they face "extreme hardship" resulting from "a substantial judgment . . . erroneously entered" against them. Def. Mot. 8. As justification for this relief, Defendants cite counsel's leukemia diagnosis and treatment as having "a substantial impact on this litigation." Def. Reply 9. This argument, however, is not distinct from Defendants' arguments for relief under Rule 60(b)(1), which the Court has already considered and denied above. *See Stevens*, 676 F.3d at 67. In any case, defense counsel's illness does not justify Defendants' multi-year failure to defend. *See Spinelli v. Sec'y of Dep't of Interior*, No. 99-CV-8163, 2006 WL 2990482, at *4 (E.D.N.Y. Oct. 19, 2006) (finding defense counsel's battle with cancer did not excuse two-year delay in seeking relief). Because Defendants do not identify any independent grounds for relief, let alone ones that could be considered "extraordinary," Defendants' request for relief under Rule 60(b)(6) is also denied.

**IV.  Conclusion**

For the foregoing reasons, Defendants' motion to vacate the default judgment is denied.

SO ORDERED.


_/s/ Eric Komitee_____
ERIC KOMITEE
United States District Judge


Dated:    March 2, 2023
          Brooklyn, New York